5-16-0330 May I please the court? My name is Sharon Shanahan and I represent the people of the state of Illinois. In this case, after delaying .215 following a traffic accident, the defendant filed a petition to rescind statutory summary suspension and motion to express. She argued that the breath test was not properly administered because she had a foreign substance in her mouth. Now, to attack a breath test, the defendant must show that the breath test was not properly administered, the result was not accurate or trustworthy, or the regulations regarding such testing were violated. In this case, the defendant is challenging only that the result was not accurate or trustworthy based on the testimony of her expert who claimed that blood in her mouth was a foreign substance. Now, this court granted the motion and the petition based solely on the conclusion that blood in the driver's mouth is a foreign substance. In this case, the state does not contest any of the trial court's findings. It's not arguing that the trial court abused discretion. Rather, the state's sole argument, in fact, this is probably the narrowest argument I have ever made to this court, is that the trial court's reading of Section 1286.310 subsection A of Chapter 20 of the Administrative Code is erroneous as a matter of law. So the standard of review is de novo. So here is our very, very narrow question. Is blood that is in the mouth before the 20-minute period of observation commences a foreign substance? Counsel, it seems to me, as I was reading the briefs, that the defendant in this case was arguing, well, it doesn't matter what the definition is, there's testimony that the test results were unreliable. And that's one of the three factors the court could consider in basically disregarding the test results. But first you have to find out if that's a foreign substance. Now, the defendant's expert said it is a foreign substance. But the defendant's expert doesn't get to define a foreign substance. Our legislature defines that. The Code defines that. And the Code is very, very clear. The Code says, during the 20-minute observation period, the subject shall be deprived of alcohol and foreign substances and shall not have vomited. So your argument is, basically, that they could have all kinds of stuff in their mouth and that wouldn't matter. If they had it in there before the test. Before, yes, that's what I'm saying. And I think the court agrees. So that doesn't make any sense at all. Well, it does. First of all, there's no prejudice to the defendant because this argument that the basis of the argument, which is it's not that blood is a foreign substance, it's that blood can affect the results of a breathalyzer test. That's the real question here. But that's not what the trial court ruled on. The trial court's order, first in reaching the prima facie case, he said, and I'm quoting here, the only reason I find a prima facie case is the presence of a foreign substance in the mouth. The trial court went on to note that the defendant's expert was very certain, again quoting, that blood in the mouth is a foreign substance. And in granting the final motion, he stated, and again I quote, I'm not granting it on any other basis other than that the blood in the mouth is a contaminant. He's even said, and here on page 408, we are not here to decide whether she was drunk or not. He's ruling on whether blood in the mouth that was there before the 20 minutes started is a foreign substance. Foreign substance is described as, and again I'm going to read, Illinois Administrative Code, Title 20, Section 1286-10 says, any substance not in the subject's body when the 20-minute observation period is commenced. That's the definition of a foreign substance. Now, the defendant's testimony, her husband's testimony, and her expert's testimony said, this blood was in her mouth because she hit her mouth on the airbag. That's when the blood entered her mouth. It was still there when she took the test. If you look at this court's decision in People v. Bellum, it wasn't blood, it was gum. Now, the court ruled on a number of issues, or this court reversed on a number of issues, but known as in this case is the conclusion that the gum that the defendant claimed to have in her mouth were not qualified as a foreign substance as defined by the Administrative Code because the defendant testified that she had gum in her mouth before the 20-minute observation period commenced. Gum in your mouth before, gum in your mouth during, doesn't matter. If it was there before, it's not a foreign substance. Blood in your mouth before, blood in your mouth during, it doesn't matter if it was in your mouth before the 20-minute test commenced. But what was the testimony that, you know, affected the reliability of the test? We're not dealing with the reliability of the test. We're dealing with whether it's a foreign substance. So reliability doesn't matter. It doesn't matter at this stage based on this trial court's ruling. I mean, this court ruling is so specific. It didn't rule whether the test was reliable. He ruled that based on the defendant's expert, blood in the mouth during the test was a foreign substance. It's not. This can go back. Other evidence, I mean, she can go back and at a trial say, bring in my expert. He says that that blood affected the results. And if she convinces the trial to factor that, then she wins. But on the issue of whether blood in the mouth that was there before the 20-minute test began, the defendant's expert doesn't get to define what a foreign subject is since our legislature has. The code has defined foreign substance. That's what it says. I mean, is it counterintuitive? I don't know. But I know what it says, and it's quite clear. Any substance not in the subject's body when the 20-minute observation period is commenced. This blood by the defendant's admission, by the testimony of her husband, and by the testimony of her own expert was there before the 20-minute observation period commenced. So basically what you're saying is had the defendant hit her lip when she got out of the police car, that would be a foreign substance if it bled. No, because the 20-minute period actually starts it. If she... I'm going to... It doesn't start the 20 minutes in the police car. Usually they wait until you get in the station. That's what I'm saying. She's getting out of the police car, hits her lip, bleeds. Not a foreign substance. That is a foreign substance. No, because the 20-minute observation period has not commenced. Okay, so you've got to determine when it started to bleed. Yes. Okay. So if she... I'll take your hypothetical. The 20-minute period has commenced. She... Falls down. Falls down, yes. And her mouth starts to bleed. Right. That's a foreign substance. This interpretation is no different than this court's interpretation of the gun in Beller. I mean, if it was there before and it continues to be in there during the 20-minute period, that's not a foreign substance. That is the way our court has... I mean, our legislature has chosen to define the word foreign substance. Foreign substance might seem like gum, but it's... And if the gum is put in your mouth during the 20 minutes, it's a foreign substance. But as this court rules in Beller... Beller, excuse me. Band-aid. Since that blood was... Gum was there before. So you're arguing right or wrong makes no difference. Correct. Okay. Thank you, counsel. May it please the court, opposing counsel. My name is Jeff Howell. I represent Thrasher-Ernstine. I don't get up to the appellate court very often, but I expected that I would hear truth coming out of lawyers that come before the court, and there were several things that really caught my eye. I had things prepared, but my emotions tend to get the worst of me. But Judge, this is a case that brings into question the trial court's decision to disallow the admission of a breath test, which it found to be unreliable. In fact, the court entered a couple of handwritten orders that said, this breath test is unreliable. Now... You're suggesting that a review of the record would show that the court did not admit the results of the breath test? That it was not found to be admissible? Yeah. The court entered two orders, handwritten orders, finding that they were unadmissible. This is about the admissibility of a breath test. And the trial court entered two orders, handwritten orders, that said unreliable. Yes, sir. And while I can appreciate the state wanting to narrow this, their interpretation of the regulation certainly ensures the admissibility, but it does not ensure that the results, once admitted, are reliable. And reliable, after all, is of paramount concern. Now, judges, these aren't my words. These are the words that the Supreme Court used in the case of People v. Vannuti. In fact, that case was a Fifth District case that dealt with a breath test, and I'm going to speak primarily about that test as I go forward. Now, I'm afraid that with the awful grief and argument of opposing counsel that this case is being perceived somehow as a foreign substance case, or that the classification of this as a foreign substance was the basis of the court's ruling, and that wasn't it. The court's ruling had to do with the fact that alcohol within the mouth, within the blood, interfered with the blood sample. And I can explain how perhaps this misconception or this misclassification might be made. Now, at the trial court level, the petitioner, the defendant, we were the petitioner, and the petitioner rescinded, and we were the defendant in the motion to suppress the evidence. We basically came forward with three different theories on why we felt that this evidence was unreliable. Coming from a purely unscientific background, the lawyer in me, I had an argument to the judge, Judge, I want you to look at this videotape. It showed the plaintiff walking around like everybody else. Unfortunately, there was no audio in this videotape. It was a videotape of the booking room where the conduction of this breathalyzer was being done. And I basically argued, hey, look at this videotape. There's a disconnect. How could she blow a .215 and walk around and do everything like a normal person? There was testimony about her fine motor control, testimony about conversations she had about metabolism. But that was our first argument. And Dr. Henson, who was our expert, I'm sure his CV is attached in our brief somewhere. And I know it's longer than any CV I'll ever think about having, but he has testified in front of the Supreme Court and he's trained people about these breathalyzers. In fact, I believe he trained the police at the police academy about these breathalyzers, and he's a guy that know. And the second theory that he came up with was during the booking video, you can see that there was some problem initially with the blow, with the initial blow. And there was some discussion that there was an insufficient sample. And we can see that the arresting officer took this mouthpiece out of the defendant's mouth, had it in his hand, there were some things going on, and eventually they used the same breathalyzer. So Dr. Henson criticized this procedure of the use of this mouthpiece a second time. We might call this a mouthpiece argument. Now the third argument that we had was based on Dr. Henson's testimony. And Dr. Henson, after he was qualified as an expert, he gave his opinion that based on a reasonable degree of scientific certainty, the breath test result in this case is not reliable or valid. As a basis for his opinion, I think it's very important, he testified that blood containing some alcohol leaking inside the mouth would cause an over-reporting of alcohol. This leaching of alcohol into the mouth would disrupt, or I'm sorry, this leaching would result in a disruption of the equilibrium referred to in Henry's law, which is the basis of all breath tests. The fact that she had active bleeding was significant and would affect the reliability of the test. He went on to say that this over-reporting of alcohol caused by blood containing some alcohol in the mouth is not a new concept. He talked about other people that testified about it. He actually referred to another gentleman who testified in a Rule 23 case who gave the same opinion that if there's some amount of alcohol in the blood, it would cause an over-reporting of this test. So, I do acknowledge that at one point in time, Judge Gross, who heard the evidence, this was a three-day hearing, I do acknowledge at one point in time, Judge Gross said, hey, the only thing I'm interested in is this foreign substance argument. He didn't mean that I'm basing everything on this foreign substance. He didn't mean that I've considered this regulation that has this definition of foreign substance. He meant, as opposed to my argument about the disconnection between the video and how she appeared, or the second argument about the mouthpiece, he merely referred to this third argument where there's some alcohol in the blood, in the mouth, he referred to that as the foreign substance argument. And, granted, he indicated that I'm only doing this, I'm only finding that you have measured her based on this foreign substance argument, and it was a misstatement. It was a statement that he used his general perception of what a foreign substance is. Now, granted, Dr. Henson was asked, after he gave his opinion as to how it screws up the reliability of the test, and how it screws up the trustworthiness of the test, he was asked, is it a foreign substance? And initially he said, yeah, it's not in my mouth, it's not in your mouth, it's a foreign substance. But if you look at the regulation now in existing, if he would have been asked, is this the regulation defined, then he was probably wrong. But the judge never based this on a reading of this regulation. He was never given this regulation by the state. There was never an argument by the state that, hey, read this regulation. The reasoning is, as the judge indicated, was the effect of the alcohol in blood, on the test. Now, as I mentioned, I want to devote some time to this case of Benuti, People v. Benuti. And it was a 5th District case that was cited in my brief. And it was later appealed and taken up to the Supreme Court. And an area of concern in this Benuti case dealt with whether or not there was some type of regurgitation, because at the time of this case regurgitation was an issue. It was something that the court should look at. The regulations then said during this observation period, deprivation period, that people shouldn't have alcohol, they shouldn't ingest alcohol, they shouldn't burp, they shouldn't belch, they shouldn't regurgitate. And I don't even believe at that time foreign substances was in the regulation. And in that case, initially, there was the same kind of thing going on. The defendant was trying to get her summary suspension rescinded. And additionally, that was actually the first hearing. The first hearing of the summary suspension, he had, Mr. Benuti, and he came into court and he testified that he had this bird, vascular esophageal reflux disease, and that it causes pain. And that he testified that during this period in the booking room, he had felt this pain and he thought that he had regurgitated. And the only other witness that was called in Benuti was, does that mean I'm finished? You may, you may quickly summarize. Okay. There was expert testimony that later came about in that case. And the testimony was that bird is a disease that involves a defect of your lower esophageal sphincter. And it allows for gases to come from your stomach into your esophagus, into your throat, into the mouth cavity, which would subject, which would be breathed in in the breath tube, and then the machine would actually not just be measuring air that comes from your deep lungs, your alveoli, but it's actually measuring the alcohol that's in the mouth. And it went to the, basically the Supreme Court as well as the appellate court and that made the test unreliable. Yes, there was discussion that this was a regurgitation, but the classification of it really isn't that important. It's the effect that this alcohol has on the testing device. And Judge Gross in Randolph County when we heard this, he wasn't concerned with the classification. He was concerned about the effect that the alcohol would have on the trustworthiness of the machine. And Venuti found, and you should find, that this breath test was unreliable and not admissible. Thank you, I appreciate it. I admit I'm a bit concerned that opposing counsel has impugned my integrity by saying that I said things to this court that were not true. I didn't hear anything of what I said wasn't true. He certainly, I agree that he made, at the trial court, there were three arguments made to the trial court the first one being look at the video, she's obviously sober. The second one was this issue of the mouthpiece after they took it off and put it back on. And then the third was the alcohol from the blood in the mouth. The judge didn't rule on the first one, the judge didn't rule on the second one. Somehow opposing counsel is saying that what the words in the records say, the very clear words in the records say, is not what the judge meant. He said, in finding that the defendant had made a prima facie case, I, the only reason that I find a prima facie case is the presence of a foreign substance in the mouth. He says that in granting the petition and the motion, he says, I'm not granting it on any other basis other than that the blood in the mouth as a contaminant. So, that's what he said. Now to argue that trial courts aren't, that nobody presented this definition of a foreign substance to the trial court and so therefore he didn't have to follow it. I mean, judges have to follow the law. This is the law. This is the definition of foreign substance is something that was not in your mouth. Excuse me, a foreign substance is something that was in your mouth before the, I'm confusing myself now, but, any substance not in the subject's body when the 20 minute observation period is commenced. That's a foreign substance. The judge said the blood that was in the defendant's mouth before the test began was a foreign substance. Under the hypothetical Justice Walsh that you and I suggested where she fell down in the police station and hit her mouth and the blood started during the 20 minute observation period, then it would be a foreign substance. But blood that started in her mouth well before this test, I didn't define foreign substance. The defendant's expert doesn't get to define foreign substance. The code defines foreign substance. Does it matter whether blood affects the, uh, blood alcohol? Well, it matters whether the blood is a foreign substance or not. It wasn't. Thank you, Your Honor. All right. Thank you, both counsel, for your arguments. The court will take this matter under advisement. If you want, we're going to take a brief recess. We'll take that for the next case in about three minutes.